IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 1:04-CR-00098-JJF-ALL |
| | : | |
| RUSSELL D. BERSCHT and | : | |
| PETER CLIRONOMOS, | : |  |
| | : | |
| Defendants. | : | |

### SUPERSEDING INDICTMENT



The Grand Jury for the District of Delaware charges that:

### INTRODUCTION

At all times relevant to this Indictment:

#### Defendant RUSSELL D. BERSCHT

1.      Defendant **RUSSELL D. BERSCHT** ("BERSCHT") was a citizen of Canada and a resident of Alberta, Canada.

2.      Defendant **BERSCHT** was employed by Octagon Capital Service, a financial brokerage house located in Alberta, Canada.

3.      Defendant **BERSCHT** controlled Mansell Investment Corporation Ltd. ("Mansell"), and was its beneficial owner.  Mansell was a company located in the Cayman Islands.

4.      Defendant **BERSCHT** maintained an account in the name of Mansell (the "Mansell Account") at the Rurik Trust Company (International) Limited ("Rurik Trust").  Rurik Trust was located in the Cayman Islands.  Its duties with respect to the Mansell Account included the depositing of funds and the processing of financial transactions.  Rurik Trust conducted

financial transactions through the Royal Bank of Canada-Cayman ("RBC-Cayman") located in the Cayman Islands.

### Defendant PETER CLIRONOMOS

5.      Defendant **PETER CLIRONOMOS** ("CLIRONOMOS") was a citizen of Canada and a resident of Vancouver, Canada.

6.      Defendant **CLIRONOMOS** owned and controlled various entities, including Kallista Real Estate, Kallista Enterprises and Kallista Group.

### The Co-Conspirator

7.      Co-conspirator C.H. was a citizen of Canada and the United States and a resident of Phoenix, Arizona.

8.      Co-conspirator C.H. owned and controlled various entities, including Quorum.Net.Inc and Atfab Holdings.

### The Dolgencorp Check

9.      Dolgencorp, Inc. ("Dolgencorp") was a Tennessee corporation with its principal place of business in Goodlettsville, Tennessee.

10.     Tyco Plastics was a corporation that provided merchandise and services for Dolgencorp.

11.     On or about October 5, 2000, Dolgencorp issued check number 496876 in the amount of $511,493 for merchandise and made payable to "Tyco Plastics"(the "Dolgencorp Check").  The Dolgencorp Check was drawn on Dolgencorp bank account number 7095000*** at SunTrust Bank Nashville, Tennessee N.A., and was to be mailed to Tyco Plastics.

2

### The Western Allied Check

12.     Western Allied Corporation ("Western Allied") was a Colorado corporation with its principal place of business in Denver, Colorado.

13.     Rmax, Inc. was a corporation that provided services for Western Allied.

14.     On or about November 15, 2000, Western Allied issued check number 055608 in the amount of $92,662.15 for services and made payable to "Rmax, Inc." (the "Western Allied Check"). The Western Allied Check was drawn on Western Allied bank account number 126400035*** at U.S. Bank in Aspen, Colorado and was to be mailed to Rmax, Inc.

### The Enron Check

15.     Enron Corp. ("Enron") was an Oregon corporation with its principal place of business in Houston, Texas.

16.     Prudential Insurance Corp. of America ("Prudential") was a New Jersey corporation with its principal place of business in Newark, New Jersey. Prudential provided health insurance coverage for Enron employees.

17.     Citibank was a financial institution with a branch in New Castle, Delaware. Citibank's deposits were insured by the Federal Deposit Insurance Corporation ("FDIC").

18.     On or about March 30, 2001, Enron issued check number 1000019255 in the amount of $350,116.24 to cover the cost of health insurance premiums for Enron employees in March 2001 and made payable to "Prudential Insurance Co. of America"(the "Enron Check"). The Enron Check was drawn on Enron bank account number 39109*** at Citibank in New Castle, Delaware, and was to be mailed to Prudential.

3

### The Compaq Check

19.    COMPAQ Corp. ("Compaq") was a Texas corporation with its principal place of business in Houston, Texas.

20.    SonicAir was a corporation that provided air freight services for Compaq.

21.    On or about July 10, 2001, Compaq issued check number 650449 in the amount of $372,694.78 for services rendered and made payable to "SonicAir" (the "Compaq Check"). The Compaq Check was drawn on Compaq bank account number 06300030*** at Chase Bank of Texas in San Angelo, Texas and was to be mailed to SonicAir.

### CHARGING PARAGRAPHS

#### Count One
18 U.S.C. 371: Conspiracy

22.    The Grand Jury realleges all of the allegations contained in paragraphs 1 through 21 of this Indictment as though set forth in full herein.

### The Conspiracy and Its Objects

23.    From in or about October 2000 to on or about July 27, 2001, in the District of Delaware, and elsewhere,

#### RUSSELL D. BERSCHT
#### and
#### PETER CLIRONOMOS

C.H., and others, known and unknown, did knowingly and willfully conspire and agree:

a.    to devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and to transmit and cause to be transmitted writings and sounds by means of wire communications in interstate and foreign commerce for the purpose of executing such scheme

4

and artifice, in violation of Title 18, United States Code, Section 1343; and

    b.  to execute and attempt to execute a scheme and artifice to defraud federally-insured financial institutions and to obtain money, funds, credits, assets, securities, and other property owned by, and under the custody and control of, federally-insured financial institutions by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

### Manner and Means of the Conspiracy

  24.  The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

    a.  Co-conspirators would steal checks and alter the name of the payee on the check to the name of an entity controlled by, or associated with, a conspirator.

    b.  Defendants **BERSCHT**, **CLIRONOMOS** and others would deposit the stolen and altered checks into bank accounts under their control.

    c.  Defendants **BERSCHT**, **CLIRONOMOS** and others would share the proceeds of the stolen and altered checks by wiring money to other accounts they controlled.

### Overt Acts

  25.  Sometime between October 5, 2000 and October 30, 2000, a conspirator altered the name of the payee on the Dolgencorp Check from "Tyco Plastics" to "Quorum.Net.Inc." The amount of the Dolgencorp Check remained the same.

  26.  On or about October 30, 2000, co-conspirator C.H. deposited the Dolgencorp Check into a bank account under his control in the name of Quorum.Net.Inc.

  27.  On or about November 6, 2000, **CLIRONOMOS** caused the distribution of the

5

proceeds of the Dolgencorp Check ($56,000), to be sent from the Quorum.Net.Inc bank account to a bank account under **CLIRONOMOS'** control, in the name of "Kallista Group."

28.     Sometime between November 15, 2000 and December 15, 2000, a conspirator altered the name of the payee on the Western Allied Check from "Rmax, Inc." to "Atfab Holdings." The amount of the Western Allied Check remained the same.

29.     On or about December 15, 2000, co-conspirator C.H. deposited the Western Allied Check into a bank account under his control in the name of Atfab Holdings.

30.     On or about January 8, 2001, **CLIRONOMOS** caused the distribution of a portion of the proceeds of the Western Allied Check ($23,060) to be sent from the Atfab Holdings bank account to a bank account under **CLIRONOMOS'** control, in the name of "Kallista Enterprises."

31.     Sometime between March 30, 2001 and April 12, 2001, a conspirator altered the name of the payee on the Enron Check from "Prudential Insurance Co. of America" to "Manshell Investment Corporation." The amount of the Enron Check remained the same.

32.     On or about April 12, 2001, **BERSCHT** and **CLIRONOMOS** sent and caused to be sent from Canada to the Cayman Islands a FedEx package containing the altered Enron Check.

33.     On or about April 18, 2001, **BERSCHT** asked an employee of Rurik Trust whether they had received the FedEx package containing the Enron Check and when funds from the check would be available for disbursement.

34.     On or about May 11, 2001, **BERSCHT** distributed a portion of the proceeds of the Enron Check by directing that $10,325 be wired from the Mansell account at Rurik Trust in the Cayman Islands to a bank account in the Cayman Islands held under the control of a relative.

35.    On or about May 14, 2001, **BERSCHT** distributed a portion of the proceeds of the Enron Check by directing that $20,000 be wired from the Mansell account at Rurik Trust in the Cayman Islands to a bank account under his control.

36.    On or about May 15, 2001, **BERSCHT** distributed a portion of the proceeds of the Enron Check by directing that $12,000 be wired from the Mansell account at Rurik Trust in the Cayman Islands to a bank account under the control of A.B., **BERSCHT's** friend.

37.    On or about May 17, 2001, **BERSCHT** and **CLIRONOMOS** caused the distribution of a portion of the proceeds of the Enron Check by directing that $76,000 be wired from the Mansell account at Rurik Trust in the Cayman Islands to a bank account in the name of "Kallista Real Estate, Ltd.," which was under the control of **CLIRONOMOS**.

38.    On or about May 23, 2001, **BERSCHT** distributed a portion of the proceeds of the Enron Check by directing that $189,000 be wired from the Mansell account at Rurik Trust in the Cayman Islands to a bank account under the control of a co-conspirator under the name of Daviance Enterprises Co., Ltd.

39.    Between on or about May 21 through May 24, 2001, **BERSCHT** withdrew approximately $11,000 in cash from the Mansell Account at Rurik Trust in the Cayman Islands, which were proceeds of the Enron Check.

40.    Sometime after July 10, 2001, a conspirator altered the name of the payee on the Compaq Check from "SonicAir" to "Octagon Capital Corporation." The amount of the check remained the same.

41.    On or about July 25, 2001, **CLIRONOMOS** sent and caused to be sent a package to Octagon Capital Services containing the Compaq Check, which was now made payable to "Octagon Capital Corporation."

7

42.    On or about July 27, 2001, **BERSCHT** and C.H. opened brokerage account 02M-41**-* at Octagon Capital Services using a fictitious Syrian passport, under the fabricated company name "Tajikcan Development Corporation Inc." (the "Tajikcan Development Account").

43.    On or about July 27, 2001, **BERSCHT** deposited the Compaq Check now made payable to "Octagon Capital Corporation,"into the Tajikcan Development Account.

### Count Two

18 U.S.C. §§ 1344, 2: Bank Fraud

44.    The Grand Jury realleges all of the allegations contained in paragraphs 1 through 21 and 24 through 43 of this Indictment as constituting the scheme and artifice to defraud and to obtain money and property from Citibank by means of materially false and fraudulent pretenses, representations and promises.

45.    On or about April 23, 2001, in the District of Delaware, and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud Citibank and to obtain money, funds, credits, security, and other property owned by and under the custody and control of Citibank by means of materially false and fraudulent pretenses, representations and promises, defendants

**RUSSELL D. BERSCHT**
**and**
**PETER CLIRONOMOS**

caused the altered Enron Check to be presented to Citibank for payment, in violation of Title 18, United States Code, Sections 1344 and 2.

## **Count Three**

### 18 U.S.C. §§ 1343, 2: Wire Fraud

46.     The Grand Jury realleges all of the allegations contained in paragraphs 1 through 21 and 24 through 43 of this Indictment as constituting the scheme and artifice to defraud and to obtain money and property from Enron and Citibank by means of materially false and fraudulent pretenses, representations and promises.

47.     On or about April 23, 2001, in the District of Delaware, and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud Enron and Citibank, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, defendants

**RUSSELL D. BERSCHT**
**and**
**PETER CLIRONOMOS**

knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce and foreign commerce, certain writings, signs, signals, and sounds, to wit: the wire transfer of $350,116.24 from the Enron account at Citibank to the Rurik Trust account at RBC-Cayman, in violation of Title 18, United States Code, Sections 1343 and 2.

A TRUE BILL.

_____
Foreperson

COLM F. CONNOLLY
United States Attorney

By: _____
JEFFREY A. NEIMAN
Trial Attorney
Criminal Division, Fraud Section

Dated: July 13, 2006

9